ORIGINAL

FILED
SEP 4 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

A.A.B JOINT VENTURE
P.O. Box 37
Rosh Ha'Aiyn
68100 Israel,

Plaintiff,

v.

UNITED STATES OF AMERICA

Defendant.

Case No. 08-628 C

**COMPLAINT**

COMES NOW, Plaintiff A.A.B Joint Venture, by its undersigned attorneys, and for its Complaint against Defendant the United States of America, seeks monetary damages and other relief on its claim, and for grounds therefore states as follows:

## I. THE PARTIES

1. Plaintiff A.A.B Joint Venture ("Contractor" or "Joint Venture") is a joint venture of co-venturers ABB Susa, Inc., A. Arenson, Ltd. and Baran Group. Under the Joint Venture Agreement the parties are equal equity partners; ABB Susa, Inc. is managing partner. The Joint Venture was formed to bid on, and perform, a contract with the United States of America, which contract is the subject of this action.

2. Defendant the United States of America (the "Government") was a party to the contract at issue, acting by and through the United States Army Engineer Corps-Europe ("USACE"), located in Wiesbaden, Germany.

## II. THE JURISDICTION

3. This suit seeks de novo review of the Contracting Officer's "deemed denial" of a claim by the Joint Venture. This Court has jurisdiction over this action pursuant to § 10(a) of the Contract Disputes Act of 1978 (41 U.S.C. § 609(a)) ("CDA") and 28 U.S.C. § 1491.

## III. FACTS

4. The project consists of the design and construction of a storage and logistics base complex for use by the Israeli Defense Force ("IDF"), which was a party to the solicitation requirements. The project is known as the Nachshonim Military Storage Base located near Elad, approximately 20 km east of Tel Aviv, Israel (the "Project"). USACE is the owner and administrator of the project until completion.

5. The base complex consists of approximately 200 buildings, 119 of which are Dry Storage Buildings ("DSBs") specifically designed to house heavy military equipment in a ready state within a controlled climate, minimizing environmental impacts from temperature and humidity. The contract contemplated that the DSBs would consist generally of a concrete sub-structure and walls set upon drilled/cast piles or spread footings, a structural steel roof (conventional or spatial-type frame) and outer insulated paneling. The remaining buildings are conventional structures used for logistics, office space, and public and auxiliary use necessary for the operation of the base. The base occupies a circular area of approximately 1,600,000 square meters, or approximately 400 acres, with the buildings located in a radial pattern around two ring roads and ten radial roads, dividing the area into ten segments and one central area. Heavy earthwork, site preparation and the implementation of communications and control systems were included in the scope of the project. Design work by the Contractor was limited to the buildings, the communications and control systems and other design not provided 100% by USACE. USACE provided the 100% design, drawings and specifications for the site

infrastructure and site development. The Contractor design for the buildings had to be coordinated with the overall infrastructure and site development design and was also governed by a conceptual design provided by the Defendant as part of the solicitation, which design was based on the requirements of the solicitation's General and Special Specifications that included certain testing and performance specifications.

6. Contractor submitted its proposal and bid for the project on April 9, 2001.

7. On June 5, 2001 Contractor was awarded Contract No. DACA90-01-C-0043 (the "Contract") for $124,089,176. The performance period was stipulated as three years (1,095 calendar days) after the June 19, 2001 Notice to Proceed, establishing an original contract completion date of June 18, 2004.

8. During the course of contract performance, several disputes arose between the parties. The claims asserted in this Complaint represent claims or costs incurred by the Joint Venture. To the extent that said claims and/or costs relate to subcontractor costs, such costs are sponsored by the Joint Venture pursuant to its obligations under the respective subcontracts.

9. This Complaint specifically involves a claim by the Joint Venture for an equitable adjustment in contract price and/or a compensable/excusable time extension in amounts to be determined at trial.

10. As part of the government-provided design the Joint Venture was required to use spatial frames on a number of the DSBs.

11. The original solicitation required "minimum type of bolts-M-20" and the special specification required that the bolts for the roof be "not less than 20mm…".

12. As a result of pre-proposal questions submitted by the bidders, the government issued amendment no. 6, which deleted the general description for bolts with a minimum diameter of 20mm.

13. In reasonable reliance on amendment 6 the Joint Venture based its bid on M16 bolts.

14. Thereafter, on November 22, 2001 the Joint Venture submitted a letter to the Government claiming that the M20 bolts were not required.

15. On November 27, 2001 the then ACO J.W. Blackburn, responded that the spatial frame bolts were required to be not less than 20 mm.

16. In the December 13, 2001 design meeting the Government stated that it would determine the acceptability of changing the contract to accept M16 bolts demanding at the same time an L/600 maximum deflection in the panels.

17. However, neither the contract nor any statements made by the parties suggested or required that the Joint Venture demonstrate compliance with the L/600 requirement as a condition precedent to acceptance of the M16 bolts.

18. The defendant continued to withhold its approval of the proposed M16 minimum bolt size pending resolution of the L/600 panel issue, thus preventing Plaintiff from releasing for fabrication the schedule-critical space frames on which these bolts were to be used.

19. As noted, this linkage between acceptance of the L/600 testing and acceptance of the M16 bolt size was an extra contractual requirement, unjustified either contractually or technically.

20. Though there was no contractual basis for its actions, Defendant continued through May 2002 to maintain that until the L/600 issue was resolved the M20 requirement would remain.

21. It was not until the JV achieved the L/600 deflection criteria in its panel test on May 29, 2002 that the Government finally approved the use of M16 bolts, five and a half months after the December 13, 2001 design meeting when the non-contractual L/600 design criteria for the panels was demanded by Defendant. This modification was effective upon signature by Mr. Keeney on behalf of the Joint Venture on June 3, 2002.

22. Only then could the Plaintiff release the critical pilot DSB spatial frame for production.

23. The Defendant's refusal to approve the use of M16 bolts on the DSB spatial frame until the JV achieved the changed requirement for L/600 deflection on the DSB roof panels caused a 53 day critical path delay to the start of fabrication of the pilot DSB spatial frame, as adjusted for time extensions previously granted for weather.

24. The decision by Defendant to require Plaintiff to comply with the L/600 panel change as a condition to approving the M16 bolts was a further change/delay to the contract, which caused the Joint Venture to change its planned method or manner of performing the contract, for which the Joint Venture is entitled to an equitable adjustment pursuant to FAR 52.243-4 entitled "Changes" and/or FAR 52.249-10 entitled "Default" of the contract General Provisions for all additional costs, impacts and delays incurred as a result thereof.

25. By letter dated February 11, 2005 the Joint Venture submitted its DSB certified claim to the Government and requested a Contracting Officer's final decision. The certified

claim contained references to the bolt size issue, and also included exhibits which referenced this issue.

26. By letter dated March 16, 2005 the Government indicated that it would issue a decision by September 23, 2005.

27. By letter dated September 22, 2005 the Contracting Officer issued a final decision denying the DSB claim in its entirety.

28. On November 2, 2005 Plaintiff filed its Complaint in Case No. 05-1172C. Plaintiff filed its First Amended Complaint on November 3, 2005.

29. In paragraphs 46 through 54 of both Complaints Plaintiff asserted that the Government's initial attempt to require M20 bolts, combined with its demand that Plaintiff perform testing to prove the panels met the L/600 requirement (which Plaintiff contends was itself a change to the contract) entitled the Joint Venture to an equitable adjustment for all additional costs, impacts and delays incurred as a result thereof.

30. The allegations and claim set forth in the referenced paragraphs of Plaintiff's complaints were before this Court from on or about November 2, 2005 through May 30, 2007. During this time both parties were free to conduct any necessary discovery with respect to the claim.

31. Plaintiff also contended in Case No. 05-1172C that the roof panels were not a part of the roof "structure" and therefore the contract, reasonably interpreted, did not require the panels to meet the L/600 deflection requirement.

32. Ultimately, to meet the L/600 requirement, the JV opted to add additional purlins to meet the extra contractual requirement and allow the panels to meet the L/600 requirement. The alternative, "beefing up" the panels, would have been significantly more expensive.

33. Plaintiff further contended in its Complaint that the requirement that the panels meet the L/600 requirement caused it to perform additional work beyond that required by the contract, entitling it to an equitable adjustment for all additional costs, impacts and delays incurred as a result thereof.

34. On May 30, 2008 the Court issued an Opinion in which it held that though the certified claim mentioned the parties' disagreement regarding permissible bolt size, it contained no clear and unequivocal statement giving the Contracting Officer adequate notice of the relief sought nor did it arise from the same set of operative facts that were presented to the Contracting Officer. Accordingly, the Court granted the Government's Motion to Dismiss the bolt size claim.

35. The Court's May 30, 2008 Opinion also denied the Government's Motion for Partial Summary Judgment with respect to the L/600 deflection claim on the basis that a genuine issue of material fact exists as to whether Modification P9 constituted an accord and satisfaction of that claim.

36. In response to the Court's Opinion, Plaintiff submitted its certified bolt size claim to the Contracting Officer on June 2, 2008. The certified claim specifically requested a Contracting Officer's decision.

37. The Contracting Officer failed within sixty days of receipt of the certified claim to either (a) issue a decision or (b) notify the Joint Venture of a time within which a decision would be issued.

38. In accordance with 41 USC §605(c ) (5), the failure of the Contracting Officer to issue a decision within the period required or notify the Joint Venture of the time within which a

decision would be issued is deemed to be a decision of the Contracting Officer denying the claim and authorizing the commencement of suit on the claim.

39. The Joint Venture requests an equitable adjustment to compensate it for the additional costs which it has incurred as a direct and proximate result of the government-caused delayed approval of the M16 bolts.

40. As a result of this delay, the Joint Venture is entitled to $1,113,000 for remission of 53 days of liquidated damages wrongfully assessed by the Government, in accordance with, but not limited to, FAR 52.243-4 and FAR 52.249-10, plus interest as provided for in the Contract Disputes Act.

WHEREFORE, A.A.B Joint Venture by Counsel, respectfully requests that this Honorable Court grant judgment in favor of A.A.B Joint Venture against Defendant the United States of America as follows:

(a) Monetary relief in such sums as the court, based on the evidence produced at trial, deems appropriate;

(b) A time extension for excusable/compensable delay and/or excusable/non-compensable delay based upon the evidence produced at trial;

(c) Statutory interest under the Contract Disputes Act;

(d) Such other and further relief as the court deems just and proper.

Respectfully submitted,

Brian Cohen
BELL, BOYD & LLOYD, PLLC
1615 L Street, NW
Suite 1200
Washington, D.C. 20036
(202) 466-6300
Attorney for Appellant